**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Gerald D. Kirkish, | ) | No. CV-08-1965-PHX-NVW |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Mesa Imports, Inc., | ) | |
| Defendant. | ) | |

Plaintiff Gerald Kirkish was employed by Honda Cars of Mesa, an automobile dealership operated by Defendant Mesa Imports, Inc. ("Mesa Imports"), from approximately July 2003 until his employment was terminated on August 9, 2007. On October 27, 2008, Kirkish filed his Complaint (doc. # 1) alleging that Mesa Imports violated the Americans with Disabilities Act of 1990 ("ADA") by inquiring into his medications. The Complaint was amended on February 25, 2009, to include a second ADA claim that Mesa Imports unlawfully discriminated against Kirkish on the basis of his disability. (Doc. # 6).

Now pending before the Court are the parties cross-motions for summary judgment (doc. ## 39, 44). Mesa Imports moves for summary judgment on both claims. Kirkish moves for summary judgment only on the claim that Mesa Imports' inquiry into his

medications violated the ADA. For the following reasons, Mesa Imports' Motion is granted and Kirkish's Motion is denied.

## I. Legal Standard for Summary Judgment

Summary judgment is warranted if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must produce sufficient evidence to persuade the Court that there is no genuine issue of material fact. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Conversely, to defeat a motion for summary judgment, the nonmoving party must show that there are genuine issues of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A material fact is one that might affect the outcome of the suit under the governing law, and a factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nature of this responsibility varies, however, depending on whether the moving party or the nonmoving party would bear the burden of proof at trial on the issues relevant to the summary judgment motion. If the nonmoving party would bear the burden of persuasion at trial, the moving party may carry its initial burden of production under Rule 56(c) by producing "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1105-06; *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990).

When the moving party has carried its burden under Rule 56(c), the nonmoving party must produce evidence to support its claim or defense by more than simply showing "there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*

The nonmoving party's evidence is taken as true and all inferences from the evidence are drawn in the light most favorable to the nonmoving party. *Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir. 1987). If the nonmoving party produces direct evidence of a genuine issue of fact, the court does not weigh such evidence against the moving party's conflicting evidence. Rather, the motion for summary judgment is denied. *Id.*

## II. Undisputed Facts

Since approximately 1994, Kirkish has suffered from peripheral neuropathy, also known as small fiber neuropathy, a painful nerve disorder that causes numbness, burning, and stinging sensations primarily in Kirkish's feet and to a lesser extent in his legs. In around 2003, after several unsuccessful attempts to control the pain, Kirkish began treating with Dr. Eric Shreder in Gilbert, Arizona. Dr. Shreder prescribed, and Kirkish began to take, various pain medications, including Neurontin. The prescribed medical information sheet for Neurontin warns of possible side effects of drowsiness, dizziness, unsteadiness, and fatigue, and instructs the patient to "use caution engaging in activities requiring alertness such as driving or using machinery." Kirkish's dose of Neurontin began at one pill a day, but was increased over time to four pills a day. Although the combination of medications has generally proved effective, it has not entirely eliminated the pain he feels in his feet and legs.

In July 2003, Kirkish was hired as a Fleet/Internet Manager at Honda Cars of Mesa,[1] an automobile dealership operated by Mesa Imports. Fleet/Internet Managers sell new and used cars and are therefore required to drive dealership vehicles for various reasons, including taking customers on test drives and moving vehicles from one location to another. Because driving vehicles safely is an essential part of the job, which Kirkish admits, Mesa Imports generally does not employ salespeople who are not "insurable" under the company's insurance policy. Therefore, when Kirkish was hired, he was required to provide Mesa Imports with his driver's license so that its insurance company could obtain his Motor Vehicle Report and verify his insurability. Mesa Imports also includes a prescription drug use policy in its Employee Handbook. The policy requires all employees who take prescription drugs that "may adversely affect judgment, coordination or the ability to perform assigned job duties" to notify their supervisors, who "will decide whether to allow the employee to remain at work or to make other suitable arrangements as allowed by law."

Throughout his employment at Honda Cars of Mesa, Kirkish was in at least the top half of all salespeople and usually in the top third. In fact, he was named Salesman of the Year in 2004. He had no accidents and received no tickets while driving a dealership vehicle and never exhibited any other poor or unsafe driving behaviors. Until 2007, there were no concerns whatsoever with his job performance.

In 2007, although there was no noticeable decrease in Kirkish's sales figures and no discernible change in his physical capabilities, some of his co-workers became concerned with his sales performance. In or around March 2007, Kirkish misinformed customers on two separate occasions within a short period of time that they could receive both a rebate and a special finance rate. Mesa Imports' incentive offer had previously included both the rebate and special rate. However, shortly before Kirkish's misquotes,

---

[1] Honda Cars of Mesa relocated and changed its name to San Tan Honda in November 2007, but is still operated by Mesa Imports.

the incentive program was changed to include one incentive or the other, but not both. Another employee, Mark Gieger, made the same mistake during the time period in which Kirkish erred. Kirkish eventually received a written disciplinary warning for the two misquotes, but no further action was taken. Finally, on one other occasion, Kirkish could not remember the name of a customer to whom he had sold a car a few days prior. However, he had contact with dozens of customers and prospective customers on a weekly basis. Despite these explanations for his shortcomings, Terry Treece, Kirkish's Team Leader, claims to have noticed a "distinct change" in Kirkish and was concerned that something was affecting his cognitive abilities.

Throughout his employment, Kirkish had openly discussed his nerve disorder and medications with co-workers and supervisors. Specifically, he explained to co-workers that he experienced "numbness, tingling, and burning sensations" in his feet and that he was taking pain medication to control the condition. Therefore, Treece was aware that Kirkish was taking pain medications. Suspecting that the medications were having a negative effect, Treece asked Kirkish to consider consulting his doctor, but Kirkish declined to discuss his medications. Still concerned about the possible impact on his sales abilities and armed with a new concern about his ability to operate a vehicle safely while on the medications, Treece consulted Barry Bauman, a Sales Manager. At Bauman's direction, Treece voiced his concerns to Richard Cvijanovich, Mesa Imports' General Sales Manager, and explained that Kirkish was taking prescription pain medications. After consulting with Bud Thurston, owner and President of Mesa Imports, and Monte Yocum, the General Manager, Cvijanovich asked Kirkish what medications he was taking so that he could determine whether Kirkish could safely operate the company's vehicles in conformity with the company's prescription drug use policy. Although Kirkish initially agreed to share information regarding his medications with Cvijanovich, he later changed his mind for privacy reasons and offered instead to ask his doctor to respond to Mesa Imports' concerns.

Thereafter, Mesa Imports contacted Seth Huber, a representative of its insurance company. Mesa Imports informed Huber that Kirkish was taking prescription pain medications and expressed its concern about his ability to drive. Huber advised Mesa Imports to obtain a medical release indicating that Kirkish is able to drive safely while on the medications. Therefore, on April 6, 2007, Mesa Imports sent Kirkish a letter informing him that he would not be permitted to drive the company's vehicles until the company "received a release from a health care professional attesting to [his] ability to safely operate a motor vehicle." Kirkish submitted a request for a release to Dr. Shreder, who, instead of providing a release, responded with an April 17, 2007, letter indicating that Kirkish is currently taking Neurontin, that he "understands the risks and hazards of driving are severe while under this medication," and that he "currently does not suffer from any symptoms, although the side effects are attached to the medication."

Upon receiving Dr. Shreder's letter, Mesa Imports asked Kirkish to provide prescription information for Neurontin, which he refused to do. Mesa Imports therefore contacted its insurance company for the second time. Tom Leander, an underwriter and risk manager for the insurance company, researched Neurontin's side effects and advised Mesa Imports that Kirkish would be considered "uninsurable" while taking Neurontin. Based on that advice and an FMLA certification from Dr. Shreder, Mesa Imports placed Kirkish on FMLA leave. Mesa Imports explained that Kirkish would need to submit a medical release before returning to work and provided him with a "Return to Work" form for his doctor to complete. On May 23, 2007, Dr. Shreder completed the "Return to Work" form, certifying that Kirkish had no work-related restrictions, but indicating that his "medication limitations" were "as described on the package inserts." Because Kirkish refused to disclose his package inserts, Mesa Imports told him that he would need to submit a second "Return to Work" form clarifying his medication limitations.

When Mesa Imports did not receive clarification, it asked Kirkish for permission to contact Dr. Shreder directly. On June 25, 2007, after Kirkish had authorized the inquiry, Mesa Imports asked Dr. Shreder whether it was safe for him to drive the

company's vehicles, to which Dr. Shreder responded that he "could drive safely so long as he is controlled on his medication." On June 28, 2007, unable to obtain an unqualified certification that Kirkish could drive vehicles safely while on Neurontin, Mesa Imports sent Dr. Shreder a letter explaining the reason for its inquiry and asking Dr. Shreder to certify, in an enclosed "Return to Work" form, that "Mr. Kirkish is medically able to safely perform the essential functions of his job, including driving, without creating a safety risk to himself or others." Because Mesa Imports had yet to receive a response on July 23, 2007, it required Kirkish to submit the "Return to Work" form by no later than August 9, 2007. On August 9, 2007, Kirkish submitted the completed form in which Dr. Shreder had certified the language quoted above. However, one hour later, Mesa Imports received a faxed copy of the same form, cancelling the certification and stating that "Dr. Shreder will not authorize driving. Mr. Kirkish is on his own recognisence (sic)." During discovery, Dr. Shreder explained that he cancelled the certification because it was too much of a "blanket statement."

On August 15, 2007, Mesa Imports sent Kirkish a letter terminating his employment as of August 9, 2007, because his doctor "would not release [him] to drive, and because driving is an essential function of [his] job . . . ." By that time, Kirkish had already filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination under the ADA. Kirkish informed the EEOC that his medical condition does not limit any of his major life activities. This action followed.

**III. Analysis**

    **A. Improper Medical Inquiry in Violation of ADA**

The ADA prohibits an employer from requiring an employee to undergo a medical examination and from inquiring "as to whether [an] employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). This prohibition applies to all employees, regardless of whether they

qualify as "disabled" under the ADA. *Indergard v. Georgia-Pacific Corp.*, 582 F.3d 1049, 1052-53 (9th Cir. 2009); *Fredenburg v. Contra Costa County Dep't of Health Servs.*, 172 F.3d 1176, 1182-83 (9th Cir. 1999). Furthermore, although an inquiry into an employee's prescription medications is not technically an inquiry into the disability itself, it qualifies as a disability-related inquiry for purposes of 42 U.S.C. § 12112(d)(4)(A). *See Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1230 (10th Cir. 1997).

Mesa Imports challenges Kirkish's claim on the bases that he is not "disabled" under the ADA and, alternatively, that its inquiry into his prescription pain medications was job-related and consistent with business necessity. Kirkish's sole argument in support of its cross-motion for summary judgment is that the inquiry was not job-related or driven by business necessity. As mentioned, an employee need not be disabled under the ADA to be protected under 42 U.S.C. § 12112(d)(4)(A), so Mesa Imports' first argument is foreclosed. This claim therefore turns on whether Mesa Imports' inquiry was job-related and consistent with business necessity. *See Fredenburg*, 172 F.3d at 1182 (concluding that the defendant bears the burden of making the requisite showing of business necessity).

Medical inquiries are job-related and consistent with business necessity when an employer has good cause to determine whether an employee is capable of performing his or her job-related functions. *See Yin v. State of California*, 95 F.3d 864, 868 (9th Cir. 1996). In this case, it is undisputed that selling cars and driving cars are two essential functions of Kirkish's job as a car salesperson. Mesa Imports does not argue that it had cause to determine whether Kirkish was capable of selling cars while taking his medications. In any event, Mesa Imports had no concerns with Kirkish's sales performance other than his two misquotes regarding sales incentives and his one-time inability to recall the name of a customer to whom he had sold a car.

Mesa Imports argues only that it had good cause to determine whether Kirkish was capable of driving safely, the other essential function of his job, and to address the related

concern about his continued "insurability" under the company's insurance policy. "[E]nsuring that the workplace is safe and secure" is a legitimate business necessity. *Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 97 (2d Cir. 2003). Therefore, in the context of jobs that require driving, verifying the ability of an employee to drive safely qualifies as a business necessity. *See EEOC v. J. B. Hunt Transp., Inc.*, 128 F. Supp. 2d 117, 131 (N.D.N.Y. 2001) (a policy of screening employees who will operate vehicles for medications which may impair their ability to drive is undoubtedly job-related).

Here Kirkish had openly discussed his nerve disorder and medications with co-workers and supervisors throughout his employment. Specifically, he explained to co-workers that he experienced "numbness, tingling, and burning sensations" in his feet and that he was taking pain medications. Therefore, prior to inquiring into Kirkish's medications, Mesa Imports was aware that he was taking prescription pain medications, which have possible side effects that include drowsiness. In light of this knowledge, it was reasonable for Mesa Imports to be concerned about Kirkish's driving ability. *See Tice v. Ctr. Area Transp. Auth.*, 247 F.3d 506, 517 (3d Cir. 2001) ("legitimate safety concerns" about driving ability existed where the plaintiff had openly "complained of severe pain and difficulty walking to the point of requiring 'narcotic' medication" and where the employer had received complaints about plaintiff's reckless driving). Although a history of drowsiness, accidents, or other poor driving behavior would certainly provide an additional basis for good cause, it is not necessary. Common sense suggests that an employer should not have to wait for an accident to occur to justify taking preventative steps. *See Wice v. General Motors Corp.*, No. 07-10662, 2008 WL 5235996, at *3, 2008 U.S. Dist. LEXIS 106727, at *7-8 (E.D. Mich. Dec. 15, 2008). The fact that Kirkish was taking prescription pain medications was sufficient to give rise to a legitimate concern about his ability to drive safely. Because Mesa Imports' inquiry was job-related and consistent with business necessity, it is entitled to summary judgment in its favor on this claim.

## B. Discrimination in Violation of ADA

Pursuant to the ADA, an employer is prohibited from discriminating against "a qualified individual" because of a disability in regard to job application procedures, hiring, discharge, compensation, training, and "other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A section 12112(a) discrimination claim is analyzed under the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 49-50 (2003). Under that framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *McDonnell*, 411 U.S. at 802. If the plaintiff succeeds, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for its actions. *Id.* The burden then shifts back to the plaintiff to demonstrate that the defendant's proffered reason was a pretext for discrimination. *Id.* at 804.

### 1. Prima Facie Case

To establish a prima facie case of discrimination under the ADA, Kirkish must demonstrate that (1) he is "disabled" within the meaning of the ADA, (2) he is a "qualified individual" within the meaning of the ADA, and (3) he suffered an adverse employment action because of his disability. *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 988 (9th Cir. 2007); *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999). Mesa Imports moves for summary judgment on the ground that Kirkish has failed to establish the first two elements of his prima facie case.

#### a. Disability

Kirkish is "disabled" under the ADA if he has a "physical or mental impairment that substantially limits one or more . . . major life activities," he has a "record of such an impairment," or he was "regarded as having such an impairment." 42 U.S.C. § 12102(2).[2]

---

[2] Although not raised in the parties' briefs, the ADA was amended by the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008). The amendment was effective January 1, 2009. Because the alleged acts of discrimination occurred before January 1, 2009, and because the amendment does not apply retroactively, Kirkish's claim

Kirkish maintains only that he was "regarded as having such an impairment," which requires him to show that Mesa Imports subjectively believed that he had an impairment and subjectively believed that the impairment substantially limited one of his major life activities. *Walton v. United States Marshals Serv.*, 492 F.3d 998, 1005-06 (9th Cir. 2007) (following *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999)); *EEOC v. United Parcel Service, Inc.*, 306 F.3d 794, 805 (9th Cir. 2002). If an employee has no direct evidence of the employer's subjective belief that he was substantially limited in a major life activity, the employee must demonstrate that the perceived impairment objectively limits the major life activity to a substantial degree. *Walton*, 492 F.3d at 1006.

Kirkish argues only that Mesa Imports perceived an impairment that substantially limited his thinking abilities. As a preliminary matter, thinking qualifies as a major life activity under the ADA. *See Head v. Glacier Northwest, Inc.*, 413 F.3d 1053, 1061 (9th Cir. 2005). As for whether Mesa Imports perceived an impairment, any physiological, mental, or psychological disorder qualifies as an "impairment" under the ADA. 29 C.F.R. § 1630.2(h). The evidence clearly indicates that Kirkish's co-workers and supervisors were aware that he suffered from peripheral neuropathy and was taking prescription pain medications. Therefore, Mesa Imports perceived an impairment. However, there is insufficient evidence that it believed the impairment substantially limited Kirkish's thinking abilities. Terry Treece, Mesa Imports' Team Leader, claims to have noticed a "distinct change" in Kirkish and was concerned that his medications were affecting his cognitive abilities. Although Treece perceived Kirkish's cognitive problems to be serious enough to voice the concerns to Cvijanovich, Cvijanovich did no more than issue a written disciplinary warning to Kirkish with respect to his two misquotes and inquire into his medications. The extent of the perceived limitation on Kirkish's thinking

---

will be analyzed under the law in effect in 2008. *See Becerril v. Pima County Assessor's Office*, 587 F.3d 1162, 1164 (9th Cir. 2009).

- 11 -

abilities is not reflected in Mesa Imports' decision to terminate his employment, because, as Kirkish admits, he was terminated for his inability to drive, not his inability to think.

There is also insufficient evidence to support an objective determination that Kirkish's thinking abilities were substantially limited. A major life activity is substantially limited if an individual is "unable to perform" the activity or is "significantly restricted as to the condition, manner or duration" under which the individual can perform the activity compared to an average person in the general population. 29 C.F.R. § 1630.2(j). Here the record indicates only that Kirkish misquoted customers on two occasions shortly after Mesa Imports' sales incentives changed, and that he failed to recall the name of one customer to whom he had sold a car. These cognitive shortcomings were by no means significant, especially in light of the facts that another employee also misquoted a customer on sales incentives and that Kirkish had contact with dozens of customers each week. There is no other evidence of a substantial limitation on Kirkish's thinking abilities. Throughout his employment, there was no noticeable drop in Kirkish's sales figures, no impaired speech, and no signs of significant memory loss. In short, nothing suggests that the limitation on Kirkish's thinking was severe enough to qualify as "substantial" within the meaning of the ADA. *Cf. Fraser v. Goodale*, 342 F.3d 1032, 1044 (9th Cir. 2003) (concluding that the inability to think three times in a five month period due to insulin reactions was not a substantial limitation on thinking). Therefore, Kirkish has failed to produce sufficient evidence that he is "disabled" under the ADA.

### b. Qualified Individual

Under the ADA, a "qualified individual" is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The individual must satisfy the "requisite skill, experience, education and other job-related requirements of the employment position . . . ." 29 C.F.R. § 1630.2(m). Here, both parties admit that driving is an essential function of Kirkish's position as a car

salesperson. The dispute centers on whether he was capable of performing that function. Mesa Imports argues that because Dr. Shreder refused to certify, without qualification, that Kirkish could drive safely while on his medications, he was incapable of driving for purposes of the ADA. Kirkish, on the other hand, maintains that he was capable of driving because he exhibited no driving problems throughout his employment and, although Dr. Shreder refused to certify unqualifiedly that he could drive safely, Dr. Shreder imposed no restrictions on his driving.

The ADA does not require an employer "to permit an employee to perform a job function that the employee's physician has forbidden." *Alexander v. Northland Inn*, 321 F.3d 723, 727 (8th Cir. 2003). Therefore, an employer may rely on the written advice of an employee's physician. *Id.* In this case, in his April 17, 2007, letter, Dr. Shreder stated that Kirkish "understands the risks and hazards of driving are severe while under this medication," and that he "currently does not suffer from any symptoms, although the side effects are attached to the medication." On May 23, 2007, Dr. Shreder completed a "Return to Work" form, certifying that Kirkish had no work-related restrictions, but indicating that his "medication limitations" were "as described on the package inserts." On June 25, 2007, when Mesa Imports asked Dr. Shreder whether it was safe for Kirkish to drive the company's vehicles, Dr. Shreder responded that he "could drive safely so long as he is controlled on his medication." Finally, on August 9, 2007, although Dr. Shreder initially certified that "Mr. Kirkish is medically able to safely perform the essential functions of his job, including driving, without creating a safety risk to himself or others," he later changed his mind, stating that "Dr. Shreder will not authorize driving. Mr. Kirkish is on his own recognisence (sic)." While these statements do not unqualifiedly release Kirkish to drive, they also do not expressly forbid driving. In light of evidence indicating that Kirkish had no accidents, speeding tickets, or any other driving problems throughout his employment with Mesa Imports, and that Dr. Shreder did not expressly restrict or forbid Kirkish's driving, a reasonable jury could find that Kirkish was qualified to drive. However, as explained above, because there is insufficient

1 evidence that Kirkish was "disabled" under the ADA, Kirkish has failed to establish his
2 prima facie case of disability discrimination.

### 2. No Evidence of Pretext

Mesa Imports argues that even if Kirkish had established his prima facie case of discrimination, Mesa Imports is nevertheless entitled to summary judgment in its favor because Kirkish has produced no evidence of pretext. As explained, if an employee successfully establishes a prima facie case of discrimination under the ADA, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for its actions. *McDonnell*, 411 U.S. at 802. The burden then shifts back to the employee to demonstrate that the employer's reason was a pretext for discrimination. *Id.* at 804.

Here Mesa Imports has articulated a legitimate, nondiscriminatory reason for terminating Kirkish's employment. Specifically, Mesa Imports terminated Kirkish's employment because Dr. Shreder would not unqualifiedly release him to drive while taking his medications and because driving is an essential function of his job. That reason is legitimate for two reasons. First, Mesa Imports has a policy of requiring all prospective and current employees to disclose prescription medication use so that it can verify the employee's driving ability. Second, Mesa Imports also has a policy of declining to employ anyone who is not insurable under the company's insurance policy. The evidence establishes that Kirkish was not insurable while taking his medications unless his doctor provided a medical release. Perhaps the obvious should be stated that the ADA does not apply to an insurer's underwriting of risks. The reason is also nondiscriminatory, because there is no evidence that Mesa Imports discriminatorily applied its policies to Kirkish and not others, or that its policies screen out individuals with disabilities.

The burden therefore shifts back to Kirkish to produce evidence that Mesa Imports' proffered reason is merely a pretext for discrimination. However, Kirkish has entirely failed to address pretext in his response to Mesa Imports's motion. He has therefore identified no genuine issues of material fact as to pretext.

1      Because Kirkish has not established a prima facie case of discrimination under the
2 ADA, and alternatively because he has failed to produce any evidence of pretext,
3 summary judgment in Mesa Imports' favor will be granted on the ADA discrimination
4 claim.

5      IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment
6 (doc. # 39) is granted and Plaintiff's Cross-Motion for Summary Judgment (doc. # 44) is
7 denied.

8      IT IS FURTHER ORDERED that the Clerk of the Court enter judgment in favor
9 of Defendant and that Plaintiff take nothing. The Clerk shall terminate this action.

10      DATED this 1st day of February, 2010.

_____
Neil V. Wake
United States District Judge